34702.   DAVISON-PAXON COMPANY *et al. v.* FORD.

Decided September 18, 1953—Rehearing denied October 1, 1953.

*T. Elton Drake, John M. Williams,* for plaintiff in error.

*Marshall, Greene, Baird & Neely, Edgar A. Neely, Jr.,* contra.

SUTTON, C. J. 1. The plaintiffs in error make the same contentions in this court as they made in their motion to dismiss the claim, filed with the State Board of Workmen's Compensation.

Code § 114-303 is as follows: "Every injured employee or his representative shall, immediately on the occurrence of any accident, or as soon thereafter as practicable, give or cause to be given to the employer, his agent, representative, or foreman, or the immediate superior of the injured employee, a notice of the accident. This notice shall be given by the employee either in person or by his representative, and until such notice is given the employee shall not be entitled to any physician's fees nor to any compensation which may have accrued under the terms of this law prior to the giving of such notice. In the event a notice has not been given within 30 days after the accident, in person either by the employee or his representative, to the employer, his agent, representative, or foreman, or to the immediate superior of the injured employee, a written notice must be given. This written notice will not be required where an injured employee or his representative has given notice in person to the employer, his agent, representative, or foreman, or to the immediate superior of the injured employee. No compensation will be payable unless such notice, either oral or written, is given within 30 days after the occurrence of an accident or within 30 days after death resulting from an accident unless it can be shown that the employee had been prevented from doing so by reason of physical or mental incapacity, or by fraud or deceit, or that the employer, his agent, representative, or foreman, or the immediate superior of the injured employee, had knowledge of the accident, or unless a reasonable excuse is made to the satisfaction of the [State Board of Workmen's Compensation] for not

giving such notice, and it is reasonably proved to the satisfaction of the [board] that the employer had not been prejudiced thereby." The required notice need not be given with a view to claiming compensation, and is sufficient if it puts the employer on notice of the injury so that it may make an investigation if it sees fit to do so. *Railway Express Agency* v. *Harper,* 70 *Ga. App.* 795 (29 S. E. 2d 434). "No defect or inaccuracy in the notice shall be a bar to compensation unless the employer shall prove that his interest was prejudiced thereby, and then only to the extent of the prejudice." Code § 114-304.

The employer's time records showed that Ford worked on January 4 and 5, 1951, for the first time after being absent on account of illness since November 1, 1950; that he had a day off on Saturday, January 6, 1951; that he was "ill" on January 8 and 9, and "deceased" on January 10, 1951. The employer's attendance record as kept at its emergency hospital also showed that Ford was "sick" on January 8 and 9, and "deceased" on January 10, 1951.

Mattie Nell Wood, a nurse in charge of the employer's emergency hospital, testified that she filled out a portion of a form in which Ford sought hospitalization benefits under employees' group insurance for the charges incurred when he was in a hospital in November, 1950, and this form showed that the cause of Ford's disability then was coronary occlusion. Miss Wood further testified that, when she visited Ford at his home prior to January 1, 1951, "I asked him if Dr. Stone knew he had to pull rugs and he said, Miss Wood, I don't have to do that. We have a porter that does it for me." The witness saw Ford when he returned to work and told him to take it easy.

Helen Ebener, the floor supervisor of the basement in which Ford worked, testified that she knew that Ford was ill during the week he died, and that she went to his funeral; that she turned in absentee reports to the hospital every day and had heard that Ford's previous absence was due to a heart condition; that she did not remember being told that Ford died of a heart condition, but could have been told so.

Under this evidence, it appears that the employer had knowledge of Ford's heart condition and of his death, sufficient to put it on inquiry as to the circumstances causing his death, and

so the finding that the employer was not prejudiced by any deficiency of notice was authorized.

2. The contention that the claim, although filed within one year of the claimant's death, was barred by the statute of limitations, in that the death was erroneously stated in the claim filed to have been the result of an accident on November 1, 1950, is without merit. Code § 114-305 provides that a claim must be filed within one year after death resulting from an accident, and not, in such a case, within one year from the time of the accident. The claimant's husband died on January 10, 1951, and her claim was filed on December 5, 1951, within a year from the time of her husband's death.

3. There was evidence showing an injury to the deceased employee's heart on January 5, 1951. According to the evidence, Ford had recuperated from his previous heart attack in November sufficiently to return to work on January 4, 1951. His condition was one of hypertension and generalized arteriosclerosis, and he was 58 years of age. He worked on January 4 and 5, occasionally showing rugs to customers by pulling back the upper rugs in a stack to bring the lower rugs into view. There were 45 to 50 rugs in each stack, and each rug weighed from 40 to 50 pounds. Ford also lifted a rug platform during the morning of January 5; it weighed about 75 pounds. His face became flushed, and he rested by leaning against a rack of rugs. He left work early, at about 3 p.m. on January 5, complaining that he did not feel well. Upon arrival at his house at about 5 p.m., he complained of tightness in his chest and of pain in his left arm, which he attempted to ease by rubbing. Ford was ordered to bed by his physician, Dr. C. F. Stone, Jr., but his symptoms of pain continued until he died. These were substantially the same symptoms as he had in November.

The death certificate by Dr. Stone was to the effect that the condition or complication leading directly to Ford's death was myocardial infarction, occurring "minutes" before death; that the morbid condition giving rise to this cause was coronary arteriosclerosis, existing previously for "years," and that the underlying cause of death was generalized arteriosclerosis. Ford died at 3:30 a.m. on January 10, 1951.

There was also medical testimony authorizing the hearing director to infer that the exertion of Ford's work on January 5 so

894

weakened his heart muscles as to have caused his fatal heart attack less than five days later.

4. The findings of fact by the Deputy Director of the State Board of Workmen's Compensation were authorized by the competent evidence adduced and the inferences therefrom; the findings supported the award, and the Superior Court of Fulton County did not err in affirming the award of death benefits to the claimant for the death of her husband.

*Judgment affirmed. Felton and Worrill, JJ., concur.*